SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

### State v. Kyle A. Smart (A-6-22) (087315)

**Argued November 28, 2022 -- Decided March 8, 2023**

**FASCIALE, J., writing for a unanimous Court.**

In this case, the Court considers whether the automobile exception to the warrant requirement, as articulated in State v. Witt, 223 N.J. 409, 447-48 (2015), permitted the warrantless search of defendant Kyle Smart's vehicle after an investigative stop. In particular, the Court considers whether the police actions giving rise to probable cause to search the vehicle were prompted by circumstances that were "unforeseeable and spontaneous," as required under Witt.

On August 4, 2021, Officer Louis Taranto commenced surveillance in front of a condominium complex located in an area where frequent narcotics transactions and other criminal activity occurred. Based on information received a month earlier from a confidential informant (CI), Taranto identified a 2017 GMC Terrain parked at the complex as a vehicle that had been involved in prior drug deals and that was used by a drug dealer known as "Killer." Taranto conducted a database search and learned defendant had been listed with the moniker "Killer" and had multiple arrests and felony convictions involving controlled dangerous substances.

Taranto surveilled the GMC. After about thirty minutes, he observed a female (the driver), defendant, and a child enter the GMC. Taranto followed them to a residence where he saw activity consistent with a drug transaction.

At some point, Officer Samantha Sutter followed the GMC to the residence. Sutter knew that multiple drug users lived there. Indeed, two months earlier, a concerned citizen had notified Sutter that drug activity may have occurred at the residence. Taranto and Sutter reasonably suspected that defendant had previously engaged in drug deals at the residence.

The officers' suspicions were bolstered by what Sutter then witnessed. Sutter observed defendant exit the GMC and walk towards the backyard of the residence. Sutter was briefly unable to see defendant. Defendant returned from the backyard, accompanied by an unidentified female; he then entered the GMC while the unidentified female returned to the residence.

1

Considering the information from the CI and the concerned citizen, Taranto's investigation, and the surveillance by Taranto and Sutter, Officers Taranto and Sutter determined they had reasonable and articulable suspicion to perform an investigative stop. Approximately one hour and seventeen minutes after Taranto first spotted the GMC, Taranto directed a third officer to pull over the GMC. Taranto and a fourth officer patted defendant down, finding no incriminating evidence, and the driver declined consent to search the GMC. Suspecting the GMC contained drugs, the officers called for a canine to perform an exterior sniff.

Twenty-three minutes after initiating the stop, a fifth officer arrived with Duke, a canine, whose positive drug "hit" established probable cause. The officers immediately searched the GMC and found drugs, drug paraphernalia, weapons, and ammunition. Defendant admitted to owning the contraband. The police arrested defendant and charged him with various crimes.

In a comprehensive oral decision, the trial judge suppressed the evidence seized from the search of the GMC because the police failed to obtain a warrant. The Appellate Division affirmed. 473 N.J. Super. 87 (App. Div. 2022). The Court granted leave to appeal. 252 N.J. 35 (2022).

**HELD:** The circumstances giving rise to probable cause in this case were not "unforeseeable and spontaneous." Those circumstances included investigating previous information from the CI and concerned citizen about defendant, the vehicle, and narcotics trafficking in the area; lengthy surveillance of defendant and the vehicle; reasonable and articulable suspicion that defendant had engaged in a drug deal; and a positive canine sniff of the vehicle. The Court therefore affirms the order suppressing the physical evidence seized from the vehicle.

1. To overcome the presumption under both the United States and the New Jersey Constitutions that a warrantless search is invalid, the State must show by a preponderance of evidence that the search falls within one of the well-recognized exceptions to the warrant requirement. One such exception is the automobile exception to the warrant requirement. In State v. Alston, the New Jersey Supreme Court applied federal constitutional law and concluded that "the exigent circumstances that justify the invocation of the automobile exception are the unforeseeability and spontaneity of the circumstances giving rise to probable cause, . . . and the inherent mobility of the automobile stopped on the highway." 88 N.J. 211, 233 (1981) (emphasis added). Under subsequent federal decisions, however, the United States Supreme Court has held that probable cause to believe a car contains contraband "alone satisfies the automobile exception to the Fourth Amendment's warrant requirement." Maryland v. Dyson, 527 U.S. 465, 467 (1999). The federal automobile exception thus does not require "a separate finding of exigency in addition to a finding of probable cause." Ibid. (pp. 10-17)

2

2. In <u>Witt</u>, the New Jersey Supreme Court declined to adopt the federal standard while simultaneously overruling state cases decided after <u>Alston</u> that imposed an exigent-circumstances requirement. The <u>Witt</u> Court viewed <u>Alston</u>'s requirement that probable cause be unforeseeable and spontaneous to "properly balance[] the individual's privacy and liberty interests and law enforcement's investigatory demands." 223 N.J. at 447. Importantly, <u>Witt</u> explained that <u>Alston</u>'s "unforeseeability and spontaneity" requirement "does not place an undue burden on law enforcement." <u>Ibid.</u> <u>Witt</u> deliberately kept the "unforeseeability and spontaneity" language first articulated in <u>Alston</u> and explicitly fortified it with the extra protections guaranteed under Article I, Paragraph 7 of the New Jersey Constitution. Article I, Paragraph 7 thus offers greater protection than the Fourth Amendment with regard to the automobile exception through the extra requirement that the circumstances giving rise to probable cause be "unforeseeable and spontaneous" -- in addition to the inherent mobility of the automobile stopped on a roadway. In New Jersey, both elements are necessary to justify a warrantless automobile search. (pp. 17-20)

3. The Court notes that the circumstances giving rise to probable cause here included a sequence of interconnected events that began with the information Sutter received from a concerned citizen two months prior to the automobile stop. The Court reviews in detail the facts of this case and concludes that the police actions that led to the warrantless search of the GMC were not prompted by the "unforeseeability and spontaneity of the circumstances giving rise to probable cause." <u>Witt</u>, 223 N.J. at 414 (quoting <u>Alston</u>, 88 N.J. at 233). Rather, the investigative stop was deliberate, orchestrated, and wholly connected with the reason for the subsequent seizure of the evidence. A warrant was therefore required before searching the GMC. The question of whether the circumstances giving rise to probable cause were unforeseeable and spontaneous is a fact-sensitive inquiry that should be analyzed case by case. (pp. 20-23)

4. In response to arguments by the State and Attorney General, the Court notes that, although it is true that police officers who possess probable cause well in advance of an automobile search should get a warrant, the <u>Alston</u>/<u>Witt</u> test requires not just that probable cause not exist long in advance of the search, but that it "aris[e] from unforeseeable and spontaneous circumstances." <u>Witt</u>, 223 N.J. at 450 (emphasis added). And there is no justification to part ways with <u>Alston</u>/<u>Witt.</u> (pp. 23-24)

     **AFFIRMED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, and WAINER APTER join in JUSTICE FASCIALE's opinion. JUSTICE SOLOMON and JUDGE SABATINO (temporarily assigned) did not participate.**

3

# SUPREME COURT OF NEW JERSEY

## A-6 September Term 2022

## 087315

State of New Jersey,

Plaintiff-Appellant,

v.

Kyle A. Smart,

Defendant-Respondent.

On appeal from the Superior Court,
Appellate Division, whose opinion is reported at
473 N.J. Super. 87 (App. Div. 2022).

| Argued | Decided |
|---|---|
| November 28, 2022 | March 8, 2023 |

Samuel J. Marzarella, Chief Appellate Attorney, argued the cause for appellant (Bradley D. Billhimer, Ocean County Prosecutor, attorney; Samuel J. Marzarella, of counsel and on the briefs).

Clifford P. Yannone argued the cause for respondent (Starkey, Kelly, Kenneally, Cunningham & Turnbach, attorneys; Clifford P. Yannone, on the briefs).

Adam D. Klein, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; Adam D. Klein, of counsel and on the brief).

Monica do Outeiro, Assistant Monmouth County Prosecutor, argued the cause for amicus curiae County

Prosecutors Association of New Jersey (Jeffrey H. Sutherland, President, County Prosecutors Association of New Jersey, attorneys; Jeffrey H. Sutherland, of counsel, and Monica do Outeiro, on the brief).

Elizabeth C. Jarit, Deputy Public Defender, argued the cause for amicus curiae Public Defender of New Jersey (Joseph E. Krakora, Public Defender, attorney; Elizabeth C. Jarit, of counsel and on the brief).

Bruce S. Rosen argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, attorneys; Bruce S. Rosen, on the brief).

Alexander Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Alexander Shalom and Jeanne LoCicero, on the brief).

JUSTICE FASCIALE delivered the opinion of the Court.

In this case, we determine whether the automobile exception to the warrant requirement, as articulated in State v. Witt, 223 N.J. 409, 447-48 (2015), permitted the warrantless search of a vehicle after an investigative stop. On the day of the stop, police investigated information received a month earlier from a confidential informant (CI) that helped link defendant Kyle Smart and a particular vehicle to narcotics trafficking in the area. After defendant entered the vehicle, police surveilled it for almost an hour, utilized information previously obtained from a concerned citizen, observed activity

2

consistent with a narcotics transaction, then pulled him over. The parties agree the investigative stop was legal. After the driver refused consent to search the vehicle, the police action continued by calling a canine unit to conduct a dog sniff to establish probable cause. The canine performed an exterior sniff and detected the presence of drugs. Thereafter, officers immediately conducted a warrantless search.

The legal question is whether the police actions giving rise to probable cause were prompted by circumstances that were "unforeseeable and spontaneous," as required under Witt, 223 N.J. at 447-48. Applying New Jersey's heightened protections under Article I, Paragraph 7 of the State Constitution, see id. at 448, the trial judge determined the circumstances were not "unforeseeable and spontaneous," concluded a warrant was required, and suppressed the evidence seized from the vehicle. The Appellate Division agreed and upheld the order.

We hold that the circumstances giving rise to probable cause were not "unforeseeable and spontaneous." Those circumstances included investigating previous information from the CI and concerned citizen about defendant, the vehicle, and narcotics trafficking in the area; lengthy surveillance of defendant and the vehicle; reasonable and articulable suspicion that defendant had engaged in a drug deal; and a positive canine sniff of the vehicle.

We therefore affirm the order suppressing the physical evidence seized from the vehicle.

## I.

On defendant's motion to suppress, the State was prepared to present testimony from multiple officers. The judge proceeded without testimony, however, because the parties agreed that the material facts were undisputed. We summarize those facts.

## A.

At 2:00 p.m. on August 4, 2021, Officer Louis Taranto, who has special drug training and experience, commenced surveillance in front of a condominium complex located in an area known to him as a place where frequent narcotics transactions and other criminal activity occurred. He observed an unoccupied 2017 GMC Terrain parked in the lot in front of the condominium. The GMC had a tinted front window and a white front Carvana license plate.

One month earlier, a CI had provided Taranto with information concerning a known drug dealer and a vehicle connected to the dealer. The CI had explained that a 5'7" to 5'9" Black male with facial tattoos and long dreadlocks, known as "Killer," had conducted drug trafficking in a vehicle that Taranto believed was like the GMC. The CI had given Taranto a photograph

4

of the vehicle involved in prior drug deals. Taranto compared the GMC to the vehicle depicted in the photograph and determined they were the same. Taranto conducted a database search of the individual described by the CI, which revealed defendant had been listed with the moniker "Killer." Taranto then investigated further and learned that defendant had multiple arrests and felony convictions involving controlled dangerous substances. Taranto concluded defendant was the person the CI described as a known drug dealer.

Suspecting that defendant had utilized the GMC previously to distribute drugs, Taranto surveilled the GMC. Approximately thirty minutes later, he observed a female (the driver), defendant, and a child enter the GMC. Taranto followed them as they drove to a Boston Market and a bank, without noticing any unusual activity. Taranto then followed them to a residence where he saw activity consistent with a drug transaction.

At some point, Officer Samantha Sutter followed the GMC to the residence. Sutter knew that multiple drug users lived there. Indeed, two months earlier, a concerned citizen had notified Sutter that drug activity may have occurred at the residence after the citizen noticed two Black males arrive in a vehicle like the GMC, enter the residence briefly, then depart. Taranto and Sutter reasonably suspected that defendant had previously engaged in drug deals at the residence.

5

The officers' suspicions were bolstered by what Sutter then witnessed. Sutter observed defendant exit the GMC and walk towards the backyard of the residence. Sutter was briefly unable to see defendant. Defendant returned from the backyard, accompanied by an unidentified female; he then entered the GMC while the unidentified female returned to the residence.

Considering the information from the CI and the concerned citizen, Taranto's investigation, and the surveillance by Taranto and Sutter, Officers Taranto and Sutter determined they had reasonable and articulable suspicion to perform an investigative stop. At around 3:17 p.m., approximately one hour and seventeen minutes after Taranto first spotted the GMC, Taranto directed a third officer, Officer Fitzgerald,[1] to pull over the GMC. Taranto and a fourth officer, Detective Duncan MacRae, joined Fitzgerald at the scene of the investigative stop.

Taranto directed defendant to exit the GMC. He patted defendant down but found no incriminating evidence. Taranto administered Miranda[2] warnings and questioned defendant generally about his actions that day. Defendant admitted visiting the residence that had been surveilled but offered no details.

_____

[1]  The record does not reveal Officer Fitzgerald's first name.

[2]  Miranda v. Arizona, 384 U.S. 436 (1966).

6

Meanwhile, MacRae asked the driver for consent to search the GMC, which the driver declined. Suspecting the GMC contained drugs, the officers called for a canine to perform an exterior sniff of the GMC.

At 3:40, twenty-three minutes after initiating the stop, Officer Raymond Vosseller arrived with Duke, a canine, whose positive drug "hit" established probable cause. The officers immediately searched the GMC and found drugs, drug paraphernalia, weapons, and ammunition. Defendant admitted to owning the contraband. The police arrested defendant and charged him with various crimes. The driver was released without any charges.

B.

In a comprehensive oral decision, the trial judge suppressed the evidence seized from the search of the GMC because the police failed to obtain a warrant. The trial judge applied Witt and State v. Alston, 88 N.J. 211 (1981); carefully considered the totality of the circumstances giving rise to probable cause; and concluded the automobile exception was inapplicable because those circumstances were not "unforeseen and spontaneous."

The Appellate Division agreed with the trial judge. State v. Smart, 473 N.J. Super. 87 (App. Div. 2022). The appellate court summarized the constitutional safeguards identified in Alston and Witt and recognized that "prohibiting police from obtaining probable cause 'well in advance' of a

7

warrantless search is not the sole command of <u>Witt</u>." <u>Id.</u> at 97. The Appellate Division noted that a second command of <u>Witt</u> requires that probable cause must "aris[e] from unforeseeable and spontaneous circumstances." <u>Ibid.</u> (alteration in original) (quoting <u>Witt</u>, 223 N.J. at 450). Concluding that the circumstances giving rise to probable cause were not unforeseen or spontaneous, the appellate court affirmed the order suppressing the evidence.

We granted the State's motion for leave to appeal. 252 N.J. 35 (2022). We also granted motions of the Attorney General, the County Prosecutors Association of New Jersey (CPA), the Office of the Public Defender, the Association of Criminal Defense Lawyers of New Jersey (ACDL), and the American Civil Liberties Union of New Jersey (ACLU) to appear as amici curiae.

II.

On appeal, the State acknowledges that, for warrantless automobile searches to be permitted, the police action must be supported by probable cause and prompted by unforeseeable and spontaneous circumstances under <u>Witt</u> and <u>Alston</u>. But the State -- joined by the Attorney General as amicus -- contends that judges should focus on whether the police "sat" on probable cause. Stressing that Duke arrived twenty-three minutes after the stop, and that the police searched the vehicle immediately after the positive "hit," the

8

State argues that the police did not "sit" on probable cause. According to the State, the circumstances that prompted police actions leading to probable cause were therefore "unforeseen and spontaneous." Amicus curiae CPA argues the Appellate Division created a per se rule, exempting from the automobile exception all car searches in which probable cause is established through a canine sniff.

Defendant contends that when the police conducted the investigative stop based on reasonable and articulable suspicion for drug activity and then called a canine to establish probable cause to search for drugs, the totality of the circumstances giving rise to probable cause were not "unforeseeable or spontaneous." Defendant emphasizes that <u>Witt</u> and <u>Alston</u> maintain the balance between individual privacy rights guaranteed under the New Jersey Constitution and law enforcement investigative demands. Amici ACDL and ACLU agree with defendant's position, stressing the steps that led to the establishment of probable cause in this case. The ACDL and ACLU additionally emphasize that <u>Witt</u> and <u>Alston</u> require that police not "sit" on probable cause and that police action be prompted by the unforeseeability and spontaneity of the circumstances giving rise to probable cause. Amicus Public Defender argues that the benefits of requiring a warrant before conducting a search outweigh the cost of prolonged detention for motorists and passengers.

9

In the Public Defender's view, no canine sniff following an investigative stop for drugs can ever be "unforeseeable and spontaneous" and the police should therefore have gotten a warrant.

## III.

"When reviewing a trial court's decision to grant or deny a suppression motion, appellate courts '[ordinarily] defer to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record.'" State v. Dunbar, 229 N.J. 521, 538 (2017) (quoting State v. Hubbard, 222 N.J. 249, 262 (2015)). But when the facts are undisputed, as they are here, and the judge interprets the law on a non-testimonial motion to suppress, our review is de novo. Ibid.

## IV.

### A.

"The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in almost identical language, protect against unreasonable searches and seizures." State v. Nyema, 249 N.J. 509, 527 (2022). Under both constitutions, "searches and seizures conducted without warrants issued upon probable cause are presumptively unreasonable and therefore invalid." State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Elders, 192 N.J. 224, 246 (2007)). And to overcome that presumption

under both constitutions, the State must show by a preponderance of evidence that the search falls within one of the well-recognized exceptions to the warrant requirement.  State v. Manning, 240 N.J. 308, 329 (2020); see also United States v. Matlock, 415 U.S. 164, 177 (1974).  "One such exception is the automobile exception to the warrant requirement."  Witt, 223 N.J. at 422; accord Pennsylvania v. Labron, 518 U.S. 938, 940 (1996).

Despite the overlap between the standards, it is well known that our State Constitution "provides greater protection against unreasonable searches and seizures than the Fourth Amendment."  State v. Carter, 247 N.J. 488, 504 (2021); see also id. at 504, 532 (declining to follow Heien v. North Carolina, 574 U.S. 54 (2014), and rejecting a reasonable mistake of law exception under the New Jersey Constitution); State v. Novembrino, 105 N.J. 95, 157-58 (1987) (declining to follow United States v. Leon, 468 U.S. 897 (1984), and rejecting a good-faith exception to Article I, Paragraph 7); State v. Reid, 194 N.J. 386, 389 (2008) (declining to follow and extend the principles in Smith v. Maryland, 442 U.S. 735 (1979), and United States v. Miller, 425 U.S. 435 (1976), and recognizing a reasonable expectation of privacy in internet subscriber information); State v. McAllister, 184 N.J. 17, 19 (2005) (declining to follow Miller, 425 U.S. 435, and finding a reasonable expectation of privacy in bank records); State v. Mollica, 114 N.J. 329, 344-45 (1989) (declining to

11

follow Smith, 442 U.S. 735, and finding a privacy interest in hotel-room telephone toll or billing records); State v. Johnson, 68 N.J. 349, 353-54 (1975) (declining to follow Schneckloth v. Bustamonte, 412 U.S. 218 (1973), and requiring the State to prove that a person has "knowledge of the right to refuse consent" to establish consent to search); State v. Hempele, 120 N.J. 182, 198 (1990) (declining to follow California v. Greenwood, 486 U.S. 35 (1988), and concluding there is a reasonable expectation of privacy in opaque containers left at the curb for collection); State v. Hunt, 91 N.J. 338, 347-49 (1982) (declining to follow Smith, 442 U.S. 735, and finding a reasonable expectation of privacy in telephone numbers called); State v. Tucker, 136 N.J. 158, 165 (1994) (declining to follow California v. Hodari D., 499 U.S. 621 (1991), and retaining the broader definition of the term "seizure" established under New Jersey constitutional law).

Greater individual protections exist for automobile searches, too. See State v. Pierce, 136 N.J. 184, 208-14 (1994) (declining to follow New York v. Belton, 453 U.S. 454 (1981), and holding that a warrantless arrest for a motor vehicle offense does not authorize the search of a vehicle's passenger compartment); see also State v. Carty, 170 N.J. 632, 635 (declining to follow Schneckloth, 412 U.S. 218, and finding that there must be "a reasonable and articulable suspicion of criminal wrongdoing" as a prerequisite to requesting

consent to search a vehicle after a routine stop for a motor vehicle violation), modified on other grounds, 174 N.J. 351 (2002).

And there are significant differences between the federal automobile exception as explained by the United States Supreme Court and the automobile exception in New Jersey, which we consider in the next section.

B.

Under federal law, the United States Supreme Court first articulated the automobile exception to the warrant requirement in Carroll v. United States, 267 U.S. 132 (1925). As the Court later explained in Chambers v. Maroney, "Carroll [held] a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible." 399 U.S. 42, 51 (1970). The Chambers Court stressed that

> [n]either Carroll . . . nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords. But the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable. Where this is true, as in Carroll and the case before us now, if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be

13

> seized and held without a warrant for whatever period
> is necessary to obtain a warrant for the search.

[Id. at 50-51.]

The Chambers Court explained, further, that it is "debatable" whether "the immobilization" of a motor vehicle while the police secured a warrant constitutes a "lesser" or "greater" intrusion than an immediate warrantless search premised on probable cause. Id. at 51-52. The Court therefore concluded that "seizing and holding a car before presenting the probable cause issue to a magistrate" and "carrying out an immediate search without a warrant" based on probable cause were equally "reasonable" courses under the Fourth Amendment. Id. at 52.

In Alston, New Jersey initially adopted an automobile exception modeled after the federal exception set forth in Chambers. 88 N.J. at 216. Alston did not apply Article 1, Paragraph 7 of our State Constitution. Instead, the Court "believed [it was] merely following the test set forth by the United States Supreme Court in Chambers." Witt, 223 N.J. at 447.

In Alston, the police pulled over a speeding vehicle, and as the driver opened the glove compartment for credentials, an officer noticed three shotgun shells. 88 N.J. at 216. The police had the occupants exit the car and patted them down but found no weapons. Ibid. One officer stayed with the occupants behind the car while another officer retrieved the shells. Ibid. In

14

the process, he saw a sawed-off shotgun under the passenger seat. Id. at 216-17. The police arrested the occupants, Mirandized them, and handcuffed them. Id. at 217. A further search uncovered two loaded handguns. Ibid. The Appellate Division affirmed the order suppressing the two handguns upon concluding that, once the occupants were out of the car, arrested, and handcuffed, "there were no longer any exigent or exceptional circumstances present justifying the warrantless search of the vehicle." Id. at 217-18.

The issue in Alston was "whether the primary rationale for this exception -- the inherent mobility of an automobile stopped on an open highway -- dissipates once the vehicle's occupants are arrested and removed from the car." Id. at 216. In addressing the "level of 'exigent circumstances' that need be shown [in New Jersey] . . . for the probable cause determination of the police to suffice as authorization for the search," and heavily relying on Chambers, 399 U.S. at 51, the Alston Court concluded "the exigent circumstances that justify the invocation of the automobile exception are the unforeseeability and spontaneity of the circumstances giving rise to probable cause, . . . and the inherent mobility of the automobile stopped on the highway." Alston, 88 N.J. at 233 (emphasis added). The Court concluded that the inherent mobility of the car continued until it was seized, and accordingly determined that the suppression of the two handguns was improper. Id. at 234-

15

Referring to Chambers, the Court stated that "it was equally permissible for the police either to conduct an immediate search at the place of the stop or to seize the vehicle and remove it to a police station before conducting the search." Id. at 233. Again, the test articulated in Alston was intended to be consistent with the contemporaneous federal standard. See Witt, 223 N.J. at 447.

But United States Supreme Court cases decided after Alston did not incorporate into the automobile exception the observation in Chambers that circumstances giving rise to probable cause in the context of automobile stops "are most often unforeseeable." In fact, in Labron, the Court expressly rejected the Pennsylvania Supreme Court's emphasis on unforeseeability in applying the Fourth Amendment:

> The Supreme Court of Pennsylvania held the rule permitting warrantless searches of automobiles is limited to cases where "unforeseen circumstances involving the search of an automobile [are] coupled with the presence of probable cause." [Commonwealth v. Labron, 669 A.2d 917, 924 (Pa. 1995) (citation omitted)] (emphasis deleted). This was incorrect. Our first cases establishing the automobile exception to the Fourth Amendment's warrant requirement were based on the automobile's "ready mobility," an exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search is clear. California v. Carney, 471 U.S. 386, 390-91 (1985) (tracing the history of the exception); [Carroll, 267 U.S. 132]. More recent cases provide a further justification: the individual's reduced expectation of privacy in an

16

automobile, owing to its pervasive regulation. Carney, 471 U.S. at 391-92. If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more. Id. at 393.

[Labron, 518 U.S. at 940 (first alteration in original).]

And in Maryland v. Dyson, the Supreme Court again emphasized that probable cause to believe a car contains contraband "alone satisfies the automobile exception to the Fourth Amendment's warrant requirement." 527 U.S. 465, 467 (1999). The federal automobile exception thus does not require "a separate finding of exigency in addition to a finding of probable cause." Ibid.

The year after Dyson was decided, this Court considered, "[i]n view of those recent federal holdings, . . . whether the automobile exception requires a finding of exigent circumstances under the New Jersey Constitution." State v. Cooke, 163 N.J. 657, 666 (2000), abrogated by Witt, 223 N.J. 409. The Cooke Court ultimately parted ways not only with the federal standard, but also with Alston, because those standards provided insufficient protection from unreasonable searches and seizures under Article I, Paragraph 7 of the State Constitution. Id. at 670. Cooke imposed a "pure," "exacting" exigent-circumstances requirement to justify a warrantless automobile search, Witt, 223 N.J. at 414, 431, holding that "exigency in the constitutional context amounts to 'circumstances that make it impracticable to obtain a warrant when

17

the police have probable cause to search the car,'" Cooke, 163 N.J. at 676 (quoting State v. Colvin, 123 N.J. 428, 437 (1991)).  The Cooke standard "eliminated any vestige of the automobile exception," including the one that this Court defined in Alston.  Witt, 223 N.J. at 431.  Under Cooke, police had to get a warrant in most automobile search cases.  Ibid.

State v. Pena-Flores "maintained the course charted by Cooke," Witt, 223 N.J. at 414, declaring that "the warrantless search of an automobile in New Jersey is permissible where (1) the stop is unexpected; (2) the police have probable cause to believe that the vehicle contains contraband or evidence of a crime; and (3) exigent circumstances exist under which it is impracticable to obtain a warrant," Pena-Flores, 198 N.J. 6, 28 (2009), abrogated by Witt, 223 N.J. 409.  The Court supplied a list of factors that could establish exigent circumstances and expected that test would "provide a reliable guide to law enforcement and that telephonic warrants would present an efficient and speedy way of curbing prolonged roadway stops."  Witt, 223 N.J. at 414, 444.

In Witt, however, a divided Court concluded that "the exigent-circumstances standard set forth in Cooke and Pena-Flores [was] unsound in principle and unworkable in practice."  Id. at 447.  Notably, the Court found that the "dizzying number of factors" police were required to consider with regard to exigency contributed to an undesirable, "new-found reliance on

18

consent searches," which were also widely abused.  Id. at 444.  The Witt Court found there was "special justification" to depart from Pena-Flores, including the practical consideration that the "get a warrant" approach to roadside searches "places significant burdens on law enforcement" without providing a measurable benefit in ordinary circumstances.  Id. at 441-47.

In overruling Cooke and Pena-Flores, however, the Court "d[id] not adopt the federal standard for automobile searches because that standard is not fully consonant with the interests embodied in Article I, Paragraph 7 of our State Constitution."  Id. at 447.  Instead, the Witt Court returned to Alston -- except "this time supported by Article I, Paragraph 7 of our State Constitution."  Ibid.  The Court reasoned that Alston's requirement that probable cause be unforeseeable and spontaneous "properly balances the individual's privacy and liberty interests and law enforcement's investigatory demands."  Ibid.  Importantly, Witt explained that Alston's "unforeseeability and spontaneity" requirement "does not place an undue burden on law enforcement."  Ibid.  Witt thus deliberately kept the "unforeseeability and spontaneity" language first articulated in Alston and explicitly fortified it with the extra protections guaranteed under Article I, Paragraph 7.

In doing so, Witt established for the automobile exception what the Court has held many times when evaluating the constitutionality of a search or

19

seizure:  Article I, Paragraph 7 of the New Jersey Constitution offers greater protection than the Fourth Amendment.  For the automobile exception, that enhanced protection derives from the extra requirement that the circumstances giving rise to probable cause be "unforeseeable and spontaneous" -- in addition to the inherent mobility of the automobile stopped on a roadway.  In New Jersey, both elements are necessary to justify a warrantless automobile search.

With that in mind, we turn to the facts of this case, which call upon us to apply the "unforeseeable and spontaneous" requirement.

V.

Here, the police actions that led to the warrantless search of the GMC were not prompted by the "unforeseeability and spontaneity of the circumstances giving rise to probable cause."  Witt, 223 N.J. at 414 (quoting Alston, 88 N.J. at 233).  The opposite occurred.  Indeed, the investigative stop was deliberate, orchestrated, and wholly connected with the reason for the subsequent seizure of the evidence.

The circumstances giving rise to probable cause included a sequence of interconnected events.  Two months prior to the automobile stop, Sutter received a report from a concerned citizen that connected a particular residence -- and a vehicle like the GMC -- with drug deals.  One month later,

20

Taranto received the CI's information, which informed his reasonable suspicion that defendant had previously utilized the GMC for drug distribution. Taranto and Sutter surveilled defendant collectively for forty-seven minutes before the stop. Defendant's disappearing into the backyard of the residence, reemerging with another person, and then reentering the GMC shortly thereafter provided reasonable and articulable suspicion to stop the GMC. Taranto radioed Fitzgerald to conduct the stop, expecting to find drugs in the vehicle, and MacRae arrived at the stop and sought consent from the driver to immediately search the GMC. Having been denied consent and having found no contraband after Taranto patted defendant down, the police then called the canine unit to conduct a canine sniff of the GMC to establish probable cause to search the vehicle for drugs.

Those combined circumstances, which together gave rise to probable cause, can hardly be characterized as unforeseeable. Although not one hundred percent certain, the officers reasonably anticipated and expected they would find drugs in the GMC. They had invested almost two hours investigating, surveilling, and utilizing five officers. See, e.g., State v. Ercolano, 79 N.J. 25, 47 (1979) (concluding that "'the circumstances' giving rise to probable cause to search [a] car were not unforeseeable" because police had probable cause to believe that the defendant was implicated in a

21

conspiracy and knew that he had been using the same vehicle for more than a week such that, "if there was . . . probable cause to believe that objects connected with the conspiracy were contained in that car, the police had that information all during the same extended period"). And they made the decision to conduct a canine sniff to transform their expectations into probable cause to support a search.

Similarly, the circumstances giving rise to probable cause were anything but spontaneous; that is, they did not develop, for example, suddenly or rapidly. Rather, the circumstances unfolded over almost two hours while investigating long-held information from a CI that defendant had utilized the GMC for drug trafficking. The fact that the canine sniff is what culminated in probable cause does not eviscerate the steps that led to the sniff. The sniff did not exist in a vacuum, but rather served to confirm and provide evidentiary support for the investigators' suspicions. The canine sniff was just another step in a multi-step effort to gain access to the vehicle to search for the suspected drugs.

In the factual setting of this investigative stop, where the circumstances giving rise to probable cause were not "unforeseeable or spontaneous," a warrant was required before searching the GMC. Clearly, the driver refused consent to search the GMC. That suggests that seizing the GMC and securing

22

a warrant would not have been a greater intrusion into the privacy interests of the occupants.  The GMC could easily have been impounded, given that the police station was minutes away from the stop.  And under the facts of this case, a warrant would have been issued following review of a search warrant application.

We emphasize, however, that the question of whether the circumstances giving rise to probable cause were unforeseeable and spontaneous is a fact-sensitive inquiry that should be analyzed case by case, as we have done in this appeal.

VI.

The State and Attorney General suggest the primary focus should be on the time between the development of probable cause and the search; that is, on whether the police "sat" on probable cause.  It is certainly true that police officers who possess probable cause well in advance of an automobile search should get a warrant.  Witt, 223 N.J. at 431.  Alston, which was decided without relying on the enhanced protections under Article 1, Paragraph 7, touched on this command.  88 N.J. at 233 (recognizing that the "circumstances that justify the invocation of the automobile exception are the unforeseeability and spontaneity of the circumstances giving rise to probable cause[] . . . and

23

the inherent mobility of the automobile stopped on the highway"). As the Witt

Court carefully explained:

> The language in Alston ensured that police officers who possessed probable cause well in advance of an automobile search sought a warrant. Police officers could not sit on probable cause and later conduct a warrantless search, for then the inherent mobility of the vehicle would have no connection with a police officer not procuring a warrant.
>
> [Witt, 223 N.J. at 431-32.]

It is also true that the officers here did not have probable cause to search the

GMC well in advance of the warrantless search. According to the State and

the Attorney General, that justifies the warrantless search of the GMC.

Such a view, however, would change the interpretation of our State

Constitution under the Alston/Witt test, which requires not just that probable

cause not exist long in advance of the search, but that it "aris[e] from

unforeseeable and spontaneous circumstances." Id. at 450 (emphasis added).

And there is no justification, let alone special justification, to part ways with

Alston/Witt. See id. at 439-41 (noting that the doctrine of stare decisis

promotes both "consistency, stability, and predictability in the development of

legal principles and respect for judicial decisions"). In sum, under the New

Jersey Constitution and principles annunciated in Alston and Witt, a warrant

was required in this case.

VII.

The judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, and WAINER APTER join in JUSTICE FASCIALE's opinion. JUSTICE SOLOMON and JUDGE SABATINO (temporarily assigned) did not participate.